**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-1710-KMT

ROGER HILL,

    *Plaintiff*,

v.

MARK EVERETT WARSEWA,
LINDA JOSEPH, and
THE STATE OF COLORADO,

    *Defendants*.

**THE STATE OF COLORADO'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

This unprecedented lawsuit attempts to transform a private disagreement over fishing access into an adjudication of Colorado's sovereign rights. To gain wading access to one particular stretch of the Arkansas River, Plaintiff Hill asks the Court to declare that the Arkansas was "navigable" at the time of Colorado's founding. Under Plaintiff's theory, this would mean that portions of the riverbed currently under private ownership must be taken from their owners and declared "public land owned by the state of Colorado." ECF No. 13, First Amended Compl. ¶¶ 16–21 (filed July 17, 2018) ("First Am. Compl."). If credited, Plaintiff's never-before-litigated legal theory will invalidate private property rights that were established near or before the year 1876, raising a host of serious legal concerns for the State—not the least of which is whether the State now owes compensation for the taking of land long held by private property owners along a 280-mile stretch of river.

Plaintiff, however, lacks both constitutional and prudential standing to litigate his asserted claims. As for constitutional standing, because only the Colorado Attorney General is authorized to represent the sovereign interests of the State, COLO. REV. STAT. § 24-31-101, Plaintiff has no legally enforceable interest in the alleged property rights he seeks to establish in the State's name. Plaintiff therefore lacks standing under Article III of the United States Constitution. Separately, under the prudential doctrine of third-party standing, one party cannot enforce another party's alleged property rights. This is particularly true when the other party is a sovereign entity. Plaintiff here is acting as a third-party interloper, raising claims that properly belong to the sovereign State of Colorado. Thus, under *Wilderness Society v. Kane County,* 632 F.3d 1162 (10th Cir. 2011) (en banc)—on-point, binding precedent from the Tenth Circuit—this case must be dismissed.

Separately, Plaintiff's complaint implicates significant sovereign interests that only the State has authority to bring into litigation. Colorado, however, has not consented to this lawsuit and Congress has not abrogated Colorado's sovereign immunity. This lawsuit is therefore barred in both this Court and any state court presented with a similar claim.

Finally, this case is defective for one final, independent reason: Plaintiff has failed to state a claim upon which relief can be granted. Under black-letter law, a person who fails to assert his or her own property rights cannot sue to quiet another party's title.

For these three independent reasons, the State moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

---

[1] This motion is not subject to the conferral requirement of D.C.COLO.L.Civ.R. 7.1.

**FACTUAL AND PROCEDURAL HISTORY**

I. **The Arkansas River in Colorado**

The Arkansas River has its headwaters in the Rocky Mountains near Leadville, Colorado. *Kansas v. Colorado*, 514 U.S. 673, 675–76 (1995). From there, it flows southeast through Cañon City and the City of Pueblo until it crosses the Colorado–Kansas border. *Id*. Approximately 280 miles of the river reside in Colorado. *Kansas v. Colorado*, 533 U.S. 1, 4 (2001). Since before Colorado became a State in 1876, private landowners, including farmers and ranchers, have owned land abutting or surrounding the river. *See Hanlon v. Hobson*, 51 P. 433, 435 (Colo. 1897) (explaining that the United States government had authority to convey to private parties "legal title to the bed of a nonnavigable stream" as well as "the lands bordering thereupon"). The title held by these private landowners has always included the riverbed itself. *E.g. id.; see also* First Am. Compl. ¶ 12 (acknowledging that Defendant Warsewa's property rights trace to a federal patent).

Through the efforts of the State of Colorado and its federal partners, public fishing access is plentiful on the Arkansas. From the river's headwaters to the City of Pueblo—a stretch of water that includes 102 miles of "Gold Medal" trout fishing—approximately 70% of land along the river is open to public fishing access. *See* Colo. Parks & Wildlife, *Upper Ark. River Fish Survey and Mgmt. Data*, p.1, *available at* https://bit.ly/2LUilP4. The Arkansas Headwaters Recreation Area—which covers 152 miles of the river—is collaboratively managed by Colorado Parks and Wildlife, the United States Bureau of Land Management, and the United States Forest Service. U.S. Dep't of Interior, Colo. Parks & Wildlife, and U.S. Forest Serv., *Ark. Headwaters Recreation Area Draft Mgmt. Plan & Envt'l Assessment*, p. 1-1 (Oct. 2017), *available at*

https://bit.ly/2vanyss. Those state and federal partners have worked together to increase fishing access, delineate private land boundaries, and increase public education regarding public access to the river. One major purpose of those efforts is to reduce the potential for conflicts like this one. *E.g.*, *id*., p. 1-22 (explaining that a goal of the recreation area is to "[k]eep impacts of recreation use and conflicts between recreationists, other land users and public and private landowners in a manner consistent with existing policies and laws").

## II.     Procedural History

The private fishing-access dispute between Plaintiff Hill and Individual Defendants Warsewa and Joseph allegedly began six years ago and came to a climax when Defendant Warsewa pleaded guilty to criminal menacing for attempting to exclude fishermen from his property. First Am. Compl. ¶¶ 16–48. The State takes no position on the allegations that gave rise to the private fishing-access dispute. The State's policy is to encourage cooperation between landowners and recreational fishermen.

This case is the third iteration of Plaintiff's attempt to use the doctrine of navigability to obtain fishing access to portions of the Arkansas River by disrupting property rights that have been settled for over a century. In February of this year, Plaintiff filed his first complaint against Defendants Warsewa and Joseph in federal court, in case number 18-cv-277, seeking a declaration that the bed of the Arkansas River is "property of the state of Colorado, held by the state of Colorado in trust for the people of Colorado." ECF No. 1, Compl. ¶ 63, No. 18-cv-277-PAB-KLM (filed February 2, 2018). That complaint did not name the State, and several months passed with no case activity. The State of Colorado, concerned with the legal ramifications of a default judgment based on Plaintiff's "navigability" theory, filed motions to intervene and to

dismiss. ECF No. 17, Mot. to Intervene, No. 18-cv-277-PAB-KLM (filed May 7, 2018). In response, Plaintiff voluntarily dismissed the suit. ECF No. 23, Notice of Voluntary Dismissal, No. 18-cv-277-PAB-KLM (filed May 29, 2018).

Six weeks later, Plaintiff tried again in state district court. *See* ECF No. 4, Compl. (filed July 6, 2018). In the state court suit, Colorado was named not as a defendant but as an "interested party." *Id*. In response to the state court complaint, Defendants Warsewa and Joseph removed the case to this Court. ECF No. 1, Notice of Removal (filed July 6, 2018).

Plaintiff has now filed a First Amended Complaint in this Court. ECF No. 8, Amended Compl. (filed July 12, 2018). In the First Amended Complaint, Plaintiff for the first time named the State of Colorado as a party defendant. Defendants Warsewa and Joseph have moved to dismiss the First Amended Complaint. ECF No. 21, Defendants Warsewa's and Joseph's Motion to Dismiss (filed July 26, 2018). The State now files this motion to dismiss.

## STANDARDS FOR DISMISSAL
## UNDER RULES 12(b)(1) AND 12(b)(6)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a case for lack of subject matter jurisdiction. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017). Under Rule 12(b)(1), the allegations in the First Amended Complaint must be taken as true. Plaintiff, however, bears the burden of establishing jurisdiction. If he cannot do so, the Court must dismiss the case. *Id*.

Under Rule 12(b)(6), the Court analyzes the legal sufficiency of the complaint to determine whether it sets forth claims upon which relief may be granted. Again, under Rule 12(b)(6), the allegations of the First Amended Complaint are taken as true. But this Court does

not assume the validity of legal conclusions in the First Amended Complaint. *Safe Streets*, 859 F.3d at 878. If the Complaint is based on defective theories of law, it must be dismissed. *See id*.

## ARGUMENT

**I. Plaintiff lacks constitutional and prudential standing to litigate title between the State and a third-party private landowner.**

    **A. Plaintiff lacks a legally protected interest in the State's property interests under Article III of the United States Constitution.**

Standing under Article III of the United States Constitution requires, among other things, that a plaintiff demonstrate an injury to a "legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). If a plaintiff fails to establish this element, the federal courts lack jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–10 (1998).

Under established case law, interested members of the public have no legally protected interest in the government's perceived property rights, even if they might derive some benefit from public lands. *See Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt.*, 363 F.3d 1069 (10th Cir. 2004) (holding that off-road vehicle enthusiasts, as members of public, do not have title in public roads and cannot assert counties' putative rights-of-way against the federal government); *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978) (explaining that members of the public do not have "title" in public roads and cannot maintain an action to quiet title in them, despite their use and enjoyment of them).

Indeed, unless a statute provides otherwise, the Attorney General has exclusive authority to represent the State's interests in court. *Mtn. States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (citing *State Bd. of Pharmacy v. Hallett*, 296 P. 540 (Colo. 1937)). Colorado law provides that the Attorney General is to appear "for the state" in all legal actions in which the

State "is a party or interested." COLO. REV. STAT. § 24-31-101(1)(a). Therefore, an action by a member of the public to quiet title in public lands must be dismissed. *See Kinscherff*, 586 F.2d at 160; *see also Mtn. States*, 630 F.2d at 771 (holding that a member of the public lacks standing to raise claims on behalf of the State); *Brotman v. E. Lake Creek Ranch, L.L.P.*, 31 P.3d 886, 895 (Colo. 2001) (concluding that a private ranch "does not have standing as an adjacent landowner, as a taxpayer, or as a beneficiary of the school lands trust" to enjoin transfer of title in lands from the State School Land Board to another private citizen).

Plaintiff asks the Court to declare the bed of the Arkansas River "public land owned by the state of Colorado in trust for public." *E.g.*, First Amended Compl. ¶¶ 13, 73. Yet the authority to enforce the State's interests in that land, if any, is reserved exclusively to the Attorney General. COLO. REV. STAT. § 24-31-101(1)(a); *Mtn. States*, 630 F.2d at 771. Even Plaintiff himself admits that he has no independent right of his own in the bed of the Arkansas River; he concedes that the alleged property rights at issue belong to the State. *See, e.g.*, *id.* ¶ 69 ("[T]he *state of Colorado* holds title to the subject real property." (emphasis added)). Therefore, this case must be dismissed for lack of constitutional standing under Rule 12(b)(1).

### B. Under the third-party standing doctrine, Plaintiff is prohibited from litigating the putative title rights of the State.

Under the prudential doctrine of third-party standing, a plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[2] This rule prohibits a member of the public

---

[2] It is not clear whether the third-party standing doctrine should be classified as constitutional or prudential. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387, n.3 (2014). Regardless, both constitutional and prudential standing may be the basis for dismissal
(*footnote continued on following page*)

from asserting the property rights of the government. *See Wilderness Soc'y v. Kane Cty.*, 632 F.3d 1162, 1172 (10th Cir. 2011) (en banc) (holding that the Wilderness Society lacked prudential standing to enforce the federal government's property rights in lands over which a county claimed rights-of-way). Even where a dispute might otherwise exist between the government and another landowner, members of the public generally—even those who might use the land—lack any independent rights of their own sufficient to demonstrate standing. *See id*. at 1171. ("TWS has taken sides in what is essentially a property dispute between two landowners …. But TWS lacks any independent property rights of its own."); *see also VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 (10th Cir. 2017) (dismissing a complaint under the third-party doctrine because the property owner lacked prudential standing to challenge a lien assessed against a previous owner).

Here, Plaintiff, despite his general interest in fishing access, is without prudential standing to enforce the perceived property rights of the State. Plaintiff is in precisely the same situation as was the Wilderness Society in *Kane County*. The district court's analogy in that case applies equally here:

> Imagine that my next-door neighbor, who keeps his property neat and tidy, is faced with a competing claimant to the land, who is likely to allow the property to

---

under Rule 12 at the pleading stage. *See VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 & n.3 (10th Cir. 2017) (classifying third-party standing as prudential, but explaining that the court could dismiss for either prudential or constitutional standing). And because this motion to dismiss is brought under both Rule 12(b)(1) and Rule 12(b)(6), the distinction between constitutional and prudential standing is irrelevant. *See id.* at 1147 n.4 (dismissing for lack of prudential standing while acknowledging that it is unclear whether Rule 12(b)(1) or Rule 12(b)(6) is the appropriate vehicle); *see also* FED. R. CIV. P. 12(g)(1) (explaining that a "motion under this rule," e.g., a Rule 12(b)(1) motion, may be joined with any other motion allowed by this rule," e.g., a Rule 12(b)(6) motion).

> fill with weeds. I might very much hope my neighbor wins. My property values and aesthetic interests could seriously be affected. I may be impatient with my neighbor's inclination toward compromise and apparent disinclination to go to court. But no one would say I have standing to sue in defense of my neighbor's property rights. The Wilderness Society is in precisely that situation.

*Kane Cty.,* 632 F.3d at 1171 (quoting *Wilderness Soc'y v. Kane Cty.*, 581 F.3d 1198, 1232 (10th Cir. 2009) (McConnell, J., dissenting)).

Plaintiff lacks an independent property right of his own and seeks to assert the perceived property rights of the State. Under binding precedent, however, the State alone has authority to determine whether to litigate its putative or alleged property rights. For over 140 years, the State has declined to pursue litigation and has instead collaborated with federal agencies and private landowners to create public access on the Arkansas River. Because Plaintiff lacks an independent property right of his own, he lacks prudential standing to litigate the State's perceived rights in lands underlying the Arkansas.

## II. Sovereign immunity bars this lawsuit in both federal and state court.

### A. The Eleventh Amendment applies here because Plaintiff seeks to litigate the State's sovereign interests in lands.

The Eleventh Amendment prohibits federal lawsuits by private citizens against non-consenting States. *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304 (1990).[3] It is "a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Accordingly, it forbids not only the entry of judgment against a State but also the initiation of legal proceedings altogether. *Seminole Tribe v.*

---

[3] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI.

*Florida*, 517 U.S. 44, 58 (1996). It thereby avoids "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (quotation omitted).

      The Eleventh Amendment's prohibition extends to actions affecting a State's sovereign interest in land. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 287 (1997) (holding that sovereign immunity applies where a successful claim would affect a State's "sovereign interest in its lands and waters"); *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 257 (2011) (noting that *Coeur d'Alene Tribe* "was 'the functional equivalent of a quiet title suit against Idaho,' … and thus was barred by sovereign immunity" (quoting *Coeur d'Alene Tribe*, 521 U.S. at 282)). Here, an ostensible expansion of Colorado's title to land underlying the Arkansas River could have far-reaching effects on the State's sovereign obligations, including under tax laws and other regulations. Doing so could also trigger takings claims by private property owners. Additionally, declaring the Arkansas to be "navigable" could expand federal jurisdiction over the river, a direct infringement of Colorado's sovereignty.

      Plaintiff's requested relief is therefore jurisdictionally barred by the Eleventh Amendment. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017) ("If … an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection."). It is immaterial that the complaint seeks to *establish* the State's title rather than *extinguish* the State's title, as in *Coeur d'Alene Tribe*. The Eleventh Amendment prevents private parties from forcing a State to litigate its rights in federal court altogether. *P.R. Aqueduct*, 506 U.S. at 146. This is true regardless of

whether the relief requested would nominally *expand* or *restrict* the State's rights. *Id*. Pursuing such expansion or restriction—or not—is a matter of sovereignty reserved to the State.

### B. Sovereign immunity bars this lawsuit regardless of whether it proceeds in federal or state court.

Plaintiff cannot avoid the State's sovereign immunity by remanding this case to state court. Determining whether a river was navigable-for-title at the time of a State's founding is a question of federal law. *United States v. Oregon,* 295 U.S. 1, 14, (1935); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 591 (2012) ("[A]ny ensuing questions of navigability for determining state riverbed title are governed by federal law."). "[N]avigability of the stream is not a local question for the state tribunals to settle." *Brewer-Elliott Oil & Gas Co. v. United States*, 260 U.S. 77, 87 (1922).

When federal courts lack jurisdiction over a federal question, state courts are also without jurisdiction. *Alden v. Maine*, 527 U.S. 706, 753 (1999) (explaining that Article III "in no way suggests … that state courts may be required to assume jurisdiction that could not be vested in the federal courts"). Congress cannot expand the jurisdiction of state courts to consider federal questions over which the federal courts lack jurisdiction. *Id*. at 752–53.

The State of Colorado could *choose* to entertain river navigability claims, as some other States have done. But the Colorado General Assembly has not abrogated the State's immunity from suit in cases seeking to affect the State's sovereign interest in lands based on questions of navigability. The Colorado Governmental Immunity Act, for example, COLO. REV. STAT. §§ 24-10-101 *et seq.*, which allows certain suits against the State and its officials to proceed, does not expand the jurisdiction of state courts to adjudicate sovereign interests like those at issue here. Instead, the Governmental Immunity Act circumscribes the State's immunity specifically with

respect to tortious conduct by state employees. *See* COLO. REV. STAT. § 24-10-102 (explaining that the Act sets forth "circumstances under which the state … may be liable in actions *which lie in tort or could lie in tort*"). The Act was adopted after the Colorado Supreme Court abrogated state sovereign immunity for injury suffered by private persons. *See Evans v. Bd. of Cty. Comm'rs*, 482 P.2d 968, 969 (1971) (discussing the need to allow "recovery against governmental units for the *negligence of their employees*" (emphasis added)). Neither *Evans* nor the Colorado Governmental Immunity Act abrogated the State's immunity from suit for actions affecting the State's sovereign interests in land subject to the navigability doctrine. Sovereign immunity thus bars this action, even in state court.

      **C.**    **Sovereign immunity requires dismissal because the State has not voluntarily waived its sovereign immunity for river navigability claims, nor has Congress abrogated it.**

To avoid the State's sovereign immunity under the Eleventh Amendment, Plaintiff must demonstrate that the State voluntarily waived or Congress abrogated that immunity. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). Plaintiff cannot meet this burden.

The State has not voluntarily waived its sovereign immunity in this case. To the contrary, Colorado has expressly preserved its sovereign immunity from suit by seeking dismissal. *See Wyandotte Nation v. Kansas City*, 200 F. Supp. 2d 1279, 1291 (D. Kan. 2002) ("Kansas has not waived its Eleventh Amendment immunity from suit by moving to intervene for the limited purpose of filing a motion to dismiss.").

Nor can Plaintiff show Congressional abrogation of Colorado's immunity. Abrogation requires, among other things, unmistakably clear language in a federal statute. *Dellmuth v. Muth*,

491 U.S. 223, 228 (1989). A general authorization for suit does not suffice, *Seminole Tribe,* 517 U.S. at 56, and the party seeking to invoke the federal court's jurisdiction bears the burden of proof, *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

The Supreme Court has already held that a claim to determine state ownership of lands beneath water bodies—the precise claim raised in this case—is barred by the Eleventh Amendment. *Coeur d'Alene Tribe*, 521 U.S. at 287. Although Plaintiff seeks only declaratory judgment and not damages, the Eleventh Amendment conclusively applies to suits seeking declaratory relief. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). Because Plaintiff cannot show that Colorado's immunity has been waived or abrogated by Congress, this case must be dismissed.

### III. Plaintiff's putative title claims must be dismissed because Plaintiff fails to state a claim for which relief can be granted.

Finally, this case must be dismissed because the First Amended Complaint fails to state a claim for relief under black-letter law. In an action to quiet title to land, a plaintiff cannot simply attack *the defendant's* title; he must assert his *own* title. *Kanab Uranium Corp. v. Consol. Uranium Mines*, 227 F.2d 434, 437 (10th Cir. 1955) ("The right as general citizens which appellants assert to go upon premises occupied by another under color of title, even though defective, is not right of title entitling them to maintain this action."). This is true as a matter of both federal and Colorado law. *Id.* at 436 ("[I]t is the law without exception that in all actions to recover possession of land or an interest therein one must prevail upon the strength of his own title and not on the weakness of his adversary's title."); *Goodrich v. Union Oil Co. of California*, 274 P. 935, 938 (Colo. 1928) ("[P]laintiffs must rely on the strength of their own title, and not on the weakness or supposed weakness of their adversaries'."). If a plaintiff cannot establish his

own title, he cannot force defendants to adjudicate the status of their own. *Webermeier v. Pace*, 552 P.2d 1021 (Colo. App. 1976), *aff'd*, 563 P.2d 950 (1977); *see also Fastenau v. Engel*, 270 P.2d 1019, 1021 (Colo. 1954) ("[I]f the plaintiff has no title he cannot complain that someone else, also without title, asserts an interest in the land.").

Plaintiff asserts no independent title of his own in the bed of the Arkansas River. *E.g.*, First Am. Compl. ¶¶ 1, 13, 50, 61, 63, 69, 73 (repeatedly admitting that Plaintiff is attempting to assert the State's "exclusive" property rights). Plaintiff, however, can neither assert title on behalf of the State nor force Defendants Warsewa and Joseph to defend their own title. This case must therefore be dismissed under Rule 12(b)(6).

## CONCLUSION

The First Amended Complaint must be dismissed under Rules 12(b)(1) and 12(b)(6).

CYNTHIA H. COFFMAN
Attorney General

*/s/Frederick R. Yarger*

FREDERICK R. YARGER*
Solicitor General

SCOTT STEINBRECHER*
Senior Assistant Attorney General

Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado 80203

Telephone: (720) 508-6000

E-mail:
 fred.yarger@coag.gov
 scott.steinbrecher@coag.gov

*Counsel of Record for the State of Colorado*

## CERTIFICATE OF SERVICE

I certify that on August 7, 2018, I electronically filed this Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following:

>Alexander Neville Hood
>TOWARDS JUSTICE—DENVER
>*Counsel for Plaintiff Roger Hill*
>
>Kirk Holleyman
>KIRK HOLLEYMAN, PC
>*Counsel for Defendants Warsewa and Joseph*

*/s/ Amy Holston*