IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 18-cv-01710-KMT

ROGER HILL,

    Plaintiff,

v.

MARK EVERETT WARSEWA,
LINDA JOSEPH, and
THE STATE OF COLORADO

    Defendants.

**RESPONSE TO MOTIONS TO DISMISS, ECF DOCS. 21 AND 27[1]**

## I. INTRODUCTION

Plaintiff is a 77-year-old fly fisherman who simply wants to fish the Arkansas River at his favorite fishing spot, just upstream from the River's confluence with Texas Creek. But the Individual Defendants, Warsewa and Joseph, are preventing him from fishing by force and threats of force. They have thrown rocks at Plaintiff, threatened to sue for trespass, and shot at Plaintiff's friend. *See* ECF Docs. 13 at ¶¶ 13-48. Plaintiff asserts that he has a right to fish at the disputed location by virtue of the federal doctrine of navigability for title, while the Individual Defendants claim they own the disputed portion of the riverbed and therefore have a right to exclude Plaintiff. *See id.*

Through various procedural moves by the State and Individual Defendants, this controversy started in federal court, was refiled in state court, and is now removed back to

---

[1] The Court granted Plaintiff's unopposed motion to file a single consolidated response to Defendants' two motions to dismiss and Plaintiff's request for excess pages of no more than 25. ECF Doc. 33.

1

federal court. *See infra* at 3-4 (describing this dispute's history). Now all Defendants seek to dismiss Plaintiffs' claims, largely on jurisdictional grounds. *See* ECF Docs. 21 and 27. As this case was originally filed in state court and subsequently removed to federal court, any finding of a lack of jurisdiction must lead to remand to state court, not dismissal. *See* ECF Doc. 28 (Plaintiff's motion for remand); 28 U.S.C.§ 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case ***shall*** be remanded." (emphasis added)).

But putting that substantial flaw aside and assuming, *arguendo*, dismissal should be considered, Defendants' arguments are as extreme as they are bold. Defendants all claim—seemingly in concert—that private citizens can stand sentry over public land, claim it as their own, repel other citizens with violence and threats of legal action, and only the State—if it chooses—can pursue a remedy.

This simply cannot stand in the context of navigable riverbeds. The State of Colorado entered the Union on an equal footing with other States, and accordingly obtained title to the bed of all navigable streams and lakes within its borders upon statehood in trust for the public to navigate, pursue commerce, and fish. *See Illinois Central Railroad v. Illinois*, 146 U.S. 387, 452 (1892). This is the law. It is not controversial. Nonetheless, the State argues in its motion to dismiss that the Plaintiff's claim that the Arkansas River is navigable for purposes of determining title to the bed, is "unprecedented" and based upon a "never-before litigated legal theory." The State's argument is as baffling as it is wrong. As demonstrated below, a rich body of law that includes numerous decisions from the U.S. Supreme Court has explored the reach of the navigability for title doctrine from the very beginning of our history. *See infra* at 4-6. Indeed, this law is based upon legal principles that date back to at least the time of the Roman Empire.

*See* Institutes of Justinian, Lib. II, Tit. I, § 2 (T. Cooper transl. 2d ed. 1841) ("Rivers and ports are public; hence the right of fishing in a port, or in rivers are in common.").

The State's obvious hostility to the very notion that it might hold title to the bed of Colorado's navigable lakes and streams stands in derogation of its sacred responsibility to protect these assets as trustee for its people. *See Glass v. Goeckel,* 703 N.W.2d 58 (Mich. 2005); *Arizona Center for Law in Public Interest v. Hassell,* 837 P.2d 158, 166 (Ariz. Ct. App. 1991).[2] If the State wants to claim that the Arkansas River is in fact not navigable, then Plaintiff is happy to litigate that issue. But for the State to work so aggressively to deny its residents not only the rights to navigable stream access enjoyed by the citizens of every other state, but the right of these citizens to even have their day in Court, is a shocking abuse of the State's fiduciary responsibility.

## II. PROCEDURAL HISTORY

Plaintiff initially filed this private fishing dispute in this Court, naming only Warsewa and Joseph as Defendants. *See Hill v. Warsewa*, 18-cv-00277-PAB-KLM, ECF Doc. 1 (D. Colo). The Individual Defendants defaulted. *See id.* at ECF Doc. 15. However, the State of Colorado—until then a non-party—moved to intervene, claimed it was a necessary and indispensable party pursuant to Rule 19, and asked the Court to dismiss based on Eleventh Amendment sovereign immunity. *See id.* at ECF Docs. 17, 17-1. Caring little what forum this dispute is litigated in and simply wanting to reach the merits of the dispute as efficiently as possible, Plaintiff dismissed the federal case pursuant to Rule 41 and refiled substantially the same case in Colorado state court. *See Hill v. Warsewa,* 2018CV030069 (Colo. Dist. Ct.). As the State had asserted it was a necessary party, but had not indicated which side, if any, it intended to take, Plaintiff named the

---

[2] The court found that any disposal of public trust lands must satisfy the state's "special obligation to maintain the trust for the use and enjoyment of present and future generations." *Id.*

3

State as an "Interested Party" in the state court caption and served the State as well as the Individual Defendants with the state court complaint.[3]

After defaulting in the original action filed in federal court, the Individual Defendants appeared in the subsequently filed state action, removed the case to this Court on the basis of federal question jurisdiction, and moved to dismiss. *See* ECF Doc. 1. Despite its eagerness to appear in the prior litigation, the State expressed an unwillingness to appear in this litigation unless it was named as a Defendant. So, Plaintiff amended, filing substantially the same Complaint for the third time, but this time added the State as a named Defendant. *See* ECF Doc. 13 (amended complaint)

The State and the Individual Defendants filed motions to dismiss the amended complaint raising myriad defenses. *See* ECF Docs. 21 and 27. Plaintiff has filed a motion to remand the case to state court pursuant to the removal statute because this Court lacks subject matter jurisdiction. *See* ECF Doc. 28.

### III. NAVIGABILITY FOR TITLE

Upon admission to the Union, states enter on an "equal footing" with the original thirteen states. *Pollard's Lessee v. Hagan*, 44 U.S. (3 How.) 212 (1845). Among other things, this "'Equal Footing Doctrine" means that states receive title to the bed of tidelands and all navigable streams and lakes within their borders. *PPl Montana, LLC v. Montana,* 565 U.S. 576, 590-91 (2012).

The Court explained the purposes of this grant in *Shively v. Bowlby*:

---

[3] Much has been made about the Plaintiff labeling the State as an "interested party" rather than a Defendant in the state court complaint. But the State also did not label itself as a Plaintiff or Defendant when it intervened in the first Federal Court action. *See Hill v. Warsewa*, 18-cv-00277-PAB-KLM, ECF Doc. 17-1 (D. Colo), (calling itself an "Intervenor"). Labeled as an interested party—which is clearly permitted in the State Court filing system—the State was left to appear on whichever side of the "V" it chose.

> The congress of the United States, in disposing of the public lands, has constantly acted upon the theory that those lands, whether in the interior or on the coast, above high-water mark, may be taken up by actual occupants, in order to encourage the settlement of the country, but **that the navigable waters and the soils under them, whether within or above the ebb and flow of the tide, shall be and remain public highways; and, being chiefly valuable for the public purposes of commerce, navigation, and fishery, and for the improvements necessary to secure and promote those purposes, shall not be granted away during the period of territorial government**, but, … shall be held by the United States in trust for the future states, and shall vest in the several states, when organized and admitted into the Union, with all the powers and prerogatives appertaining to the older states in regard to such waters and soils within their respective jurisdictions; in short, shall not be disposed of piecemeal to individuals, as private property, but shall be held as a whole for the purpose of being ultimately administered and dealt with for the public benefit by the state, after it shall have become a completely organized community.

152 U.S. 1, 49-50 (1894) (emphasis added). Thus, when Colorado was admitted to the Union in 1876, it received title to the bed of all navigable rivers and lakes within the State. The Supreme Court recently reaffirmed these principles. *See PPl Montana, LLC v. Montana,* 565 U.S. at 589-93 (2012).

The nature of state ownership of the bed of navigable waters was further explained by the Supreme Court in *Illinois Central Railroad v. Illinois*:

> That the state holds the title to the lands under the navigable waters … in the same manner that the state holds title to soils under tide water, by the common law, we have already shown …. **But it is a title different in character from that which the state holds in lands intended for sale.** It is different from the title which the United States hold in the public lands which are open to pre-emption and sale. **It is a title held in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein**, freed from the obstruction or interference of private parties.

146 U.S. 387, 452 (1892). (Emphasis added.) No Colorado Courts have examined this issue of federal law. *See PPl Montana, LLC,* 565 U.S. at 591 ("[A]ny … questions of navigability for

determining state riverbed title **are governed by federal law.**" (emphasis added)).[4] But other Courts in other states have consistently parroted *Illinois Central* and *Shively*.[5] Accordingly, if the Arkansas River is navigable for title purposes along the segment used by the Plaintiff, the State of Colorado owns the bed in trust for the public and, accordingly, Plaintiff has the right to fish there.

---

[4] Public access on **state** constitutional grounds was unsuccessfully argued in *People v. Emmert*, 597 P.2d 1025 (Colo. 1979). Importantly, the parties in *Emmert* stipulated that the contested river was not navigable at statehood, and the argument regarding public access instead revolved around the Colorado Constitution. *Id.* at 1026 ("The parties stipulated that the river is non-navigable and had not historically been used for commercial or trade purposes of any kind."). To the best of Plaintiff's counsels' knowledge, no Colorado state court has ever considered the federal law issue of whether a river in this state is navigable for title at statehood. And while two older Colorado court cases suggest in *dicta* that there are no navigable streams in the state, *Stockman v. Leddy*, 129 P. 220, 222 (Colo. 1912); *In re German Ditch & Reservoir Co.,* 139 P. 2, 9 (1913), the Arkansas River was not in dispute in either case, neither opinion undertakes the rigorous, segment-by-segment analysis of individual rivers described by the Supreme Court, and these decisions' generic use of the word "navigable" makes it wholly unclear as to whether they are discussing navigability for federal regulation under the commerce clause or navigability for title purposes, *see PPL Mont., LLC,* 565 U.S. at 589-93*; Oregon by Div. of State Lands v. Riverfront Prot. Assoc.,* 672 F.2d 792, 794 n.1. (9th Cir. 1982) (discussing the difference between navigability for title purposes and navigability for federal regulatory purposes).

[5] *See, e.g., Kramer v. City of Lake Oswego*, 395 P.3d 592, 604 (Or. 2017) ("[T]he state, by virtue of its sovereignty and its admission as a state under the equal-footing doctrine, takes title to the submerged and submersible lands underlying navigable waters in trust for the public for purposes of navigation, fishing, and recreation….") (citing *Shively*, 152 U.S. 1; *Illinois Central*, 146 U.S. at 452); *Ariz. Ctr. for Law in the Pub. Interest v. Hassell,* 837 P.2d 158, 168 (Ariz. App. 1991). ("[A] state, as administrator of the trust in navigable waters on behalf of the public, does not have the power to abdicate its role as trustee in favor of private parties.") (quoting *Kootenai Envtl. Alliance, Inc. v. Panhandle Yacht Club, Inc.*, 671 P.2d 1085, 1088 (Idaho 1983) (citing *Illinois Central*, 146 U.S. 387)); *Provo City v. Jacobsen*, 176 P.2d 130, 140 (Utah 1947) ("Thus the states acquired all rights previously exercised by the King alone or the King and Parliament, including the bed or soil under navigable waters which is held by the people of the states as sovereign in trust for public uses.") (citing *Illinois Central*, 146 U.S. 387); *Winters v. Myers*, 140 P. 1033, 1037 (Kan. 1914) ("[T]he trust upon which such submerged lands are held for the public purposes of navigation, fisheries and the like…."); *Crawford Co. v. Hathaway*, 93 N.W. 781, 789 (Neb. 1903) ("The waters in such streams would be held to be publici juris, and not subject to riparian claims by the adjoining landowner….") (citing *Shively*, 152 U.S. 1; *Illinois Central*, 146 U.S. 387).

## IV. ANALYSIS

### A. If the Court Lacks Subject Matter Jurisdiction, This Case Must Be Remanded to State Court, Not Dismissed

The vast majority of Defendants' arguments in their motions to dismiss request dismissal for lack of subject matter jurisdiction. *See* ECF Docs. 21 at 1-16 (Individual Defendants arguing for dismissal because of a lack of Article III standing) and 27 at 6-7, 9-11 (State arguing for dismissal because of Eleventh Amendment immunity and lack of Article III standing). But when, as here, a case was originally filed in state court and was then removed to federal court, the proper remedy for lack of subject matter jurisdiction is remand to state court, not dismissal. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded." (emphasis added)). Plaintiff has filed a motion requesting that mandatory remand. *See* ECF Doc. 28.

This Court must consider the Rule 12(b)(1) arguments regarding lack of subject matter jurisdiction before proceeding to Defendants' non-jurisdictional arguments. *See Bell v. Hood*, 327 U.S. 678, 682 (1946); *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (holding that once a federal court determines that it is without subject matter jurisdiction, it must not proceed to consider any other issue). If in that threshold jurisdictional determination the Court finds a lack of subject matter jurisdiction, is must remand to state court and **not proceed** to any of Defendants' merits arguments. *See* 28 U.S.C.§ 1447(c); ECF Doc. 28.

### B. The State's Assertion of Eleventh Amendment Immunity Requires Remand

The State asserts Eleventh Amendment sovereign immunity to both of Plaintiff's claims.

*See* ECF Doc. 27 at 9-10. For purposes of this response, Plaintiff accepts[6] this assertion of immunity and believes that either Plaintiff's claims against the State or Plaintiff's claims against both the State and the Individual Defendants must be remanded to state court as a result. *See* ECF Doc. 28 (arguing that the assertion of Eleventh Amendment immunity robs the Court of subject jurisdiction and requires remand). Indeed, the Supreme Court has considered whether the assertion of Eleventh Amendment immunity should bar a private citizen from asserting claims involving navigable riverbed rights in federal court and found that it does. *See generally Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997).

But Plaintiff does not concede that the State is a necessary or indispensable party to this private fishing dispute under Rule 19 and therefore does not concede that the assertion of Eleventh Amendment immunity by the State should doom Plaintiff's claims against the Individual Defendants.[7] *But see Hill v. Warsewa,* 18-cv-00277-PAB-KLM, ECF Docs. 17, 17-1 (D. Colo) (the State's motion to intervene in the prior federal litigation arguing that it is a necessary and indispensable party to similar claims); *supra* at 3-4 (describing prior litigation). This issue is not considered in Defendants' motions, but it is the Court's duty to consider this issue *sua sponte*. *See Enter. Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 892 (10th Cir. 1989) ("[T]his issue is not waivable, and … a reviewing court has "an independent duty to

---

[6] It should also be noted that Plaintiff's claims were not futile in Federal Court on these grounds until the State decided to assert the immunity, as the immunity is waivable. *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so."). Thus, the assertion of sovereign immunity's impact on this Court's jurisdiction did not attach until the State first claimed immunity in its motion to dismiss on August 8. Plaintiff filed his motion for remand shortly thereafter on August 10. *See* ECF Doc. 28.

[7] In two important public trust title cases, the States of California and Michigan appeared as amicus curiae, apparently recognizing that their participation as a party was not necessary. *Glass v. Goeckel,* 703 N.W.2d 58 (Mich. 2005); *Marks v. Whitney*, 6 Cal. 3d 251 (1971).

raise it **sua sponte**." (quotations omitted and emphasis in original)). Thus, while Plaintiff takes no position on the issue here,[8] Plaintiff's counsel points the Court to the issue as an officer of the Court.

## C. <u>Plaintiff Has Standing[9]</u>

Both the Individual Defendants and the State argue that Plaintiff lacks constitutional standing under Article III of the United States Constitution. *See* ECF Docs. 21 at 6-15, 27 at 6-7. These arguments lack merit because they hinge on the mistaken premise that Plaintiff is attempting to allege the State's injury rather than his own. ECF Doc. 21 at 3; ECF Doc. 27 at 6. They claim that that any injury is to the State's "legally protected interest," not Plaintiff's. *See Lujan v. Defendants of Wildlife,* 504 U.S. 555, 561 (1992) (injury in fact must be to a "legally protected interest."). This is mistaken.

The test for standing was set out by the Supreme Court in *Lujan,* 504 U.S. at 560-561.[10] There the Court held that for a party to have standing he or she must demonstrate an injury in

---

[8] Plaintiff should not be forced to argue against an issue not raised by Defendants and expressly reserves his right to argue that the State is neither a necessary nor indispensable party in any future proceedings.

[9] If Plaintiff lacks Constitutional standing, this Court lacks subject matter jurisdiction, and the case must be remanded to state court under the removal statute. 28 U.S.C.§ 1447(c).

[10] There also appears to be a second path to standing in the 10th Circuit for claims under the Declaratory Judgment Act, like Plaintiff's first claim here. The declaratory judgment act provides that "[i]n a ***case of actual controversy*** within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. As used in the act, "case of actual controversy" means a "case or controversy" under Article III of the United States Constitution. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1300 (10th Cir. 2008) (finding the same and citing *Aetna*). A line of cases has grown out of *Aetna* determining when the Article III "case or controversy" requirement has been met in the context of declaratory judgments. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1375-85 (10th Cir. 2011) (describing history of cases). And a finding that a case meets the "case of actual controversy" requirement under the Declaratory Judgment Act is sufficient to find Article III standing, as both analyses answer the same question: does a "case or controversy" exist under the Constitution? *Protocols,*

fact that is "concrete and particularized" and "actual or imminent." *Id.* In addition, a party must show that the injury can be traced to the conduct of the defendant and can be redressed by the relief being sought. *Id.; see Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir.2004). Plaintiff easily meets this test.

Plaintiff asserts the same injuries for both claims: (1) the denial of his right to use the disputed riverbed for fishing, (2) physical injury from physical violence inflicted by the Individual Defendants, (3) the expense of costly litigation if the Individual Defendants were to pursue a trespass action, and (4) arrest and criminal prosecution if the Individual Defendants were to call the Sheriff and press charges, as they have threatened. ECF Doc. 13 ¶ 13 ("Plaintiff Hill fears physical violence, arrest, and claims of trespass if he returns to this fishing spot."), ¶¶ 14-48 (detailed allegations of the basis of this fear); ECF Doc. 13-3 (note from Defendant Warsewa to Plaintiff stating, "YOU CAN AND WILL BE CHARGED WITH TRESPASSING!").

These injuries either have happened or there is a substantial risk that they will happen in the future. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'"). The Individual Defendants have thrown large rocks at Plaintiff, threatened to pursue criminal trespass charges, and shot at Plaintiff Hill's

---

*LLC v. Leavitt,* 549 F.3d 1294, 1300 (10th Cir. 2008) (*Citing Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531 (2008) (Article III can be satisfied only if plaintiff has standing).

Here, there can be little doubt that the dispute between Plaintiffs as to whether or not the disputed riverbed was navigable for title at statehood, and thus whether or not the Individual Defendants own the riverbed, "is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Columbian Fin. Corp.*., 650 F.3d at 1385. And that alone should be enough for standing for Plaintiff's first claim. *See Protocols, LLC ,* 549 F.3d at 1300.

friend. *See* ECF Docs. 13 at ¶¶ 13-48; ECF Doc. 13-3. Indeed, Defendant Warsewa pleaded guilty to menacing for shooting at Plaintiff's friend while he waded on the disputed riverbed. *See* ECF Doc. 13 ¶¶ 33-48. For the purposes of considering standing at the motion to dismiss stage, these allegations must be taken as true. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). And given these allegations, Plaintiff plausibly alleges that he fears physical violence, arrest, criminal prosecution, and claims of civil and criminal trespass if he returns to his favorite fishing spot. *Id.* ¶ 13; *Tandy v. City of Wichita,* 380 F.3d at 1283 ("[p]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury….").

Finally, all these injuries can clearly be traced to the Individual Defendants' conduct and all of the injuries can be redressed by the relief being sought, *i.e.,* declaring the disputed riverbed the property of the State held in trust for the public and quieting title to the riverbed to ensure that title, and the public rights attached to it, are secured. *See Lujan,* 504 U.S. at 560-561. The only remaining question, and the only question contested by Defendants, is whether the Plaintiff's injury is to a "legally protected interest." It plainly is.

   1. **The Right to Access Navigable Riverbeds Is a Legally Protected Interest**

Defendants make much of the fact that the navigability for title doctrine grants title to the State at statehood, suggesting that this deprives only the State of a legal interest. *See, e.g.,* ECF Doc. 21 at 9 (repeatedly underlining the word "state"). But they conveniently ignore the nature of this title. As the Supreme Court has said, the State holds a title that is "different in character" from land subject to disposition and sale. It holds title "in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein." *Illinois Central Railroad*, 146 U.S. at 452; *see supra* at 4-5 (quoting *Shively,* 152 U.S. at 49-50). And while never considered in Colorado state courts, courts in other states too numerous to count have recognized that a state's title in navigable riverbeds conferred under

the Equal Footing Doctrine is encumbered by the public's right in navigation, commerce, and fishing. *See supra* at n. 6. That right encompasses both of Plaintiff's claims and represents a "legally protected interest."

### 2. State Laws Unrelated to the Merits Issues Also Provide Legally Protected Interests

In order to succeed on the merits of his claim, Plaintiff must show that the Arkansas River at the disputed location was navigable for title at the time of statehood. But the legal sufficiency of Plaintiff's claim is not the test for an "injury in fact." *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006). ("[T]hat would put the merits cart before the standing horse."). And Plaintiff's "legally protected interest" need not "be the same as, or even related to, the legal basis for the plaintiff's claim." *In re Special Grand Jury 89-2*, 450 F. 3d 1159, 1173 (10th Cir.2006). As the Third Circuit succinctly describes, any law, state or federal, can be that protected interest:

> "legally protected interests" may arise from the Constitution, from common law, or "solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan*, 504 U.S. at 576-78 (quoting *Warth*, 422 U.S. at 500). Both federal law and state law — including state statutes – "can create interests that support standing in federal courts." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 992 (7th Cir. 1988)).

*Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017).

Here, Colorado state law also provides "legally protected interests." This lawsuit seeks a judicial determination regarding whether Plaintiff has a right to fish on the disputed riverbed or whether the Individual Defendants have a right to exclude him for trespass. Moreover, it would lessen the likelihood of physical violence. Colorado law justifies all non-lethal force in defending one's real property. Colo. Rev. Stat. § 18-1-705. If the Individual Defendants own the riverbed, physical violence in removing Plaintiff could be justified. If they do not own the riverbed, that same physical violence is tortious battery and criminal menacing under Colorado law.

12

Determining whether fishing on the disputed riverbed is state law trespass and whether the Individual Defendants using physical force to exclude Plaintiff is battery or excused are both legally protected interests under state law.

### 3. Plaintiff's Claims Are Not "Generalized Grievances"

Though never really articulated by Defendants, their real standing gripe appears to be that Plaintiff has merely raised a "generalized grievance," *i.e.*, "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); ECF Doc. 21 at 10 (citing cases on generalized grievances in arguing against prudential standing). According to *Hollingsworth,* "to have standing, a litigant must seek relief for an injury that affects him in a 'personal and individual way. He must possess a 'direct stake in the outcome' of the case." *Id.* at 705.

First, it is not at all clear that standing should be denied just because an injury is widely shared. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)* (1973); 412 U.S. 669, 687 ("[W]e have already made it clear that standing is not to be denied simply because many people suffer the same injury."); *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). ("[T]he fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process."). In *Federal Elections Commission v. Akins*, 524 U.S. 11, 24 (1998), the Court acknowledged that some of its decisions had used broad language to suggest that commonly-shared injuries were not justiciable. But the Court noted that this broad language "appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature." *Id*. The Court went on to explain that "where a harm is concrete, though widely shared, [we have] found

13

"injury in fact." *Id*., *citing Public Citizen v. Department of Justice,* 491 U.S. 440 at 449–450. There can be little doubt that the Plaintiff's injury in this case is concrete.

Indeed, Plaintiff has concrete and particularized harms independent of the public at large. The Supreme Court recently grappled with this generalized injury vs. concrete and particularized injury dichotomy in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) and appeared to adopt an approach similar to that articulated in *Akins*. In *Spokeo*, the Supreme Court considered whether procedural violations of the Fair Credit Reporting Act were sufficient to confer standing to pursue a private cause of action under that statute. *Id.* The Court found no standing because "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. Rather than a mere procedural violation, a Plaintiff must instead show a "particularized" injury that "must affect the plaintiff in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U. S. at n. 1).

Of particular relevance here, however, is Justice Thomas' *Spokeo* concurrence where he analogized the rule announced in *Spokeo* to the traditional difference between a litigant vindicating a "private right" with a litigant vindicating a "public right." *Id.* at 1550-52. According to Justice Thomas, public rights include "**free navigation of waterways**, passage on public highways, and general compliance with regulatory law." *Id.* at 1551 (*quoting* Woolhander & Nelson, *Does History Defeat Standing Doctrine?,* 102 Mich. L. Rev. 689, 693 (2004)). In this framework, "[t]he existence of **special, individualized damage** had the effect of creating a private action for compensatory relief to an otherwise public-rights claim." *Id.* at 1552 (emphasis added). An 1808 decision from the Pennsylvania Supreme Court—cited in the Woolhander article relied on by Justice Thomas—describes exactly what kind of special damage is needed to pursue a private action against an individual **who is obstructing a navigable waterway**:

> The general principle has been always agreed, that for an obstruction to a highway, which is a common nuisance, an action cannot be supported, but by a person who has suffered some special damage…. The plaintiff has averred that he had procured a large quantity of boards and timber and made them into rafts to bring down the river; that he seized the opportunity of a flood, and did come down as far as the obstruction, and was there stopped by the obstruction. It is certain that he must have suffered special damage, and the jury have found so; and if he has, it is immaterial whether it was immediate or consequential.

*Hughes v. Heiser*, 1 Binn. 463, 468-69 (Pa. 1808).

Here, Plaintiff has alleged exactly the kind of specialized, concrete, and particularized injury that allows him to pursue a suit against the Individual Defendants for obstructing his access to the riverbed of a navigable waterway. The Individual Defendants have thrown large rocks at Plaintiff, threatened to pursue criminal trespass charges, and shot at Plaintiff Hill's friend. *See* ECF Docs. 13 at ¶¶ 13-48. And Plaintiff plausibly fears physical violence, arrest, and claims of trespass if he returns to this fishing spot." ECF Doc. 13 ¶ 13. Thus, even if Plaintiff is trying to vindicate a public right of access to the river he alleges is navigable, he has a specialized, concrete, and particularized injury that permits him standing.

Moreover, every case cited by Defendants is distinguishable because they all involve a Plaintiff asserting a standing based on a more traditional State title. Here, Plaintiff asserts a right to fish based on a servitude that encumbers the State's title. The leading case addressing the precise question of whether members of the public have a sufficient interest in the use of navigable waterways and their beds to confer standing in a quiet title action is *Marks v. Whitney*, 6 Cal. 3d 251, 262 (1971). There, the Court found resoundingly in favor of standing:

> Does Whitney have "standing" to request the court to recognize and declare the public trust easement on Marks' tidelands…. **Yes**…. It is now well settled that the court may finally determine as between the parties in a quiet title action all of the conflicting claims regarding any estate or interest in the property. **Where the interest concerned is one that, as here, constitutes a public burden upon land to which title is quieted, and affects the defendant as a member of the public, that servitude should be explicitly declared.**

*Id.* (emphasis added, citations and quotations omitted); *see also Utah Stream Access Coal. v. Orange St. Dev.*, 416 P.3d 553, 565 (Utah 2017) (Dissent arguing that "[t]he majority avoids the question of whether a private party has standing to bring a claim that the State has title to the lands underlying navigable waters. Because I see a claim for navigability-for-title as being identical to a claim for quiet title, I would reach that issue and hold that Utah citizens, in some circumstances, do have standing.").

Finally, it is tragic that the State of Colorado, as trustee for Colorado citizens, is unwilling to stand up for the public's right of access to navigable waters. It is worse still that the State seeks to deny Plaintiff his day in court, which, because of the State's dereliction of duty, is the only effective way that he can protect his interest in fishing from the bed of the Arkansas River. Plaintiff has amply demonstrated his concrete, particularized, and imminent injury, both in the context of his declaratory judgment and quiet title claims and Plaintiff thus urges the Court to recognize his standing to bring these claims.

**D. <u>Plaintiff Does Not Allege Third Party Prudential Standing</u>**

Defendants also all argue that Plaintiff lacks third party prudential standing. *See* ECF Docs. 21 at 1-16 (Individual Defendants arguing for dismissal because of a lack of third-party prudential standing) and 27 at 7-9 (State arguing the same). First, the Court need not consider this non-jurisdictional issue if it decides it lacks jurisdiction for other reasons. *Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 n. 1 (10th Cir.2011) ("prudential standing is not a jurisdictional limitation"). If the Court were to reach this issue, however, Plaintiff does not assert third-party standing, but instead asserts standing based on his own personal injury. *See supra* at 9-16.

16

**E. <u>There Is No Common Law Sovereign Immunity in Colorado</u>**

In addition to asserting Eleventh Amendment immunity, the State also attempts a novel argument that it has common law sovereign immunity with regard to the claims asserted in the Complaint. *See* ECF Doc. 27 at 11-12. But there is no common law sovereign immunity in Colorado. **The Colorado Supreme Court abrogated all common law sovereign immunity** in *Evans v. Bd. of Cty. Comm'rs*, 482 P.2d 968 (1971). After *Evans*, the Colorado legislature implemented limited **statutory** sovereign immunity for torts under the Colorado Governmental Immunity Act (CGIA). *See* Colo. Rev. Stat. § 24-10-106 ("A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort."). The Colorado Supreme Court recently reaffirmed *Evans* and described the current state of sovereign immunity in Colorado:

> Until 1971, governmental entities in Colorado enjoyed protection from suit under the doctrine of sovereign immunity. In *Evans v. Board of County Commissioners of El Paso County*, we departed from that doctrine. 174 Colo. 97, 482 P.2d 968, 968 (Colo. 1971), superseded by statute on other grounds as recognized in *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176 (Colo. 2001). We observed that the judicially created doctrine resulted in "the injustice and inequity—even absurdity—of having recovery for negligence against individuals and against firms for negligence of their employees, but no recovery against governmental units for the negligence of their employees." *Id.* at 969. We concluded that the General Assembly—and not the courts—should determine when, if ever, governmental entities should have immunity from suit. *Id.* at 972. The General Assembly responded by adopting the CGIA. *See* Colorado Governmental Immunity Act, Ch. 373, sec. 1, §§ 130-11-1 to -17, 1971 Colo. Sess. Laws 1204, 1204-12 (now codified at §§ 24-10-101 to -120).

*Open Door Ministries v. Lipschuetz,* 373 P.3d 575, 578 (Colo. 2016).

There simply is no common law sovereign immunity in the State of Colorado over any claims, including those here, and the Defendants rightly do not assert statutory sovereign immunity. *See id.* The State's argument must therefore fail.

## F. Federal Claims Can Be Heard in State Courts

Though confusing, embedded in the State's argument regarding common law sovereign immunity is a suggestion that Colorado state courts are somehow an improper forum to decide the navigability of a river because it is a federal question. *See* ECF Doc. 27 at 11. The case cited stands for the limited proposition that if a State has sovereign immunity in state court, that sovereign immunity cannot be abrogated in federal court by federal legislation. *Alden v. Maine*, 527 U.S. 706, 755 (1999) .

But the State does not have state law sovereign immunity, *supra* at 17, and the Colorado state courts are courts of general jurisdiction capable of hearing all claims, including those raised here. *See* Colo. Const. art. VI, § 9 ("[t]he district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases …."); *Consumer Crusade v. Affor. Health Care Sol.*, 121 P. 3d 350, 353 (Colo. App. 2005) ("Moreover, state courts of general jurisdiction are presumed to have jurisdiction over federal claims." (citing *Tafflin v. Levitt*, 493 U.S. 455 (1990)).

In *Idaho v. Coeur d'Alene Tribe of Idaho*, the Supreme Court considered exactly the issue here: whether a state court is an appropriate forum for claims of riverbed navigability if a federal court lacks jurisdiction. 521 U.S. 261 (1997). The Supreme Court found that "[w]hile we can assume there is a special role for Article III courts in the interpretation and application of federal law in other instances as well, **we do not for that reason conclude that state courts are a less than adequate forum for resolving federal questions**." *Id.* at 275 (emphasis added).

## G. Plaintiff Has a Claim to the Real Property Sufficient to Quiet Title

Finally, Defendants argue that Plaintiff lacks a sufficient "interest" in the disputed riverbed to quiet title. *See* ECF Docs. 21 at 15-16, 27 at 13-14. First, while Plaintiff alleges the State holds title to the riverbed, he also alleges that it is held in trust for the public to use in

18

commerce, navigation, and fishing. ECF Doc. 13 ¶¶ 13, 49-59, 69-71; *Illinois Central Railroad*, 146 U.S. at 452. The only court to consider whether that title is sufficient for a private citizen to quiet title to a navigable river found that it was. *See Marks*, 6 Cal. 3d at 262; *see also Utah Stream Access Coal.*, 416 P.3d at 565 (dissent arguing majority should have reached quiet title issue and quieted title over navigable riverbed in suit by private party). Moreover, Colorado's quiet title law—codified in Colo. R. Civ. P. 105—does not require a plaintiff to have title to the real property at issue. Rather, it requires an "interest" in the real property. *See id.* ("In any proceeding for the recovery of real property **or an interest therein**…." (emphasis added)); *Keith v. Kinney*, 961 P.2d 516, 519 (Colo. Ct. App. 1997) ("[T]he action to quiet title here must address the **interests** of all of the parties…." (emphasis added)). Plaintiff contends that the servitude for public commerce, navigation, and fishing encumbering the State's title to the riverbed is a sufficient interest.

If the Court finds that the question of whether Plaintiff's interest in a navigable riverbed is sufficient to quiet title is close under state law, the Court should certify the question to the Colorado Supreme Court pursuant to Colo. App. R. 21.1(a). *See Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (Certification may be appropriate "where the legal question at issue is novel and the applicable state law is unsettled.").

## V. CONCLUSION

For the forgoing reasons, Defendants' Motions to Dismiss should be denied.

Respectfully submitted,

By: s/Alexander Hood
Alexander Hood
Attorney for the Plaintiff
1410 High St., Suite 300
Denver, CO 80218
Ph: 802-578-5682
Email: AlexanderHoodLaw@gmail.com

19

**Certificate of Service**

      I hereby certify that on August 28, 2018, I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.

                                                    s/Alexander Hood  
                                                    Alexander Hood