IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01710–KMT

ROGER HILL,

    Plaintiff,

v.

MARK EVERETT WARSEWA,
LINDA JOSEPH, and
THE STATE OF COLORADO,

    Defendants.

---

# ORDER
---

    This case comes before the court on Defendants Linda Joseph and Mark Everett Warsewa's ("Defendants Joseph and Warsewa") "Motion to Dismiss" (Doc. No. 21, filed July 26, 2018), to which Plaintiff Roger Hill ("Plaintiff") filed a Response (Doc. No. 35, filed August 28, 2018) and to which Defendants Joseph and Warsewa filed a Reply (Doc. No. 42, filed September 11, 2018). Also before the court is Defendant State of Colorado's ("Defendant State of Colorado" or the "State") "Motion to Dismiss the First Amended Complaint" (Doc. No. 27, filed August 7, 2018), to which Plaintiff filed a Response (Doc. No. 35, filed August 28, 2018) and to which Defendant State of Colorado filed a Reply (Doc. No. 42, filed September 11, 2018). Before the court is also Plaintiff's "Motion to Remand to State Court" (Doc. No. 28, filed August 10, 2018), to which Defendant State of Colorado and Defendants Joseph and Warsewa filed

Responses (Doc. Nos. 34, 36) and to which Plaintiff filed a Reply (Doc. No. 40, filed August 31, 2018).

## BACKGROUND

Plaintiff Roger Hill, a private citizen, has sued private landowners and the State of Colorado with the ultimate goal of securing his right to wade and to fly-fish in specific areas of the Arkansas River. The following facts are taken from the Plaintiff's Complaint and the parties' submissions with respect to the pending motions to dismiss and motion to remand.

As much as 76-year-old Mr. Hill loves fly fishing on the Arkansas River, unfortunately he is not one of the private property owners of the Arkansas River riverbed. Mr. Hill neither alleges nor claims that he owns any of the land at issue or that he has any claim on the title to the land. Unless he is on public land as he traipses through the river, then, Mr. Hill could be trespassing on private property. (See Doc. No. 13 [Am. Comp.], ¶ 1).

Unlike Mr. Hill, Defendants Waresa and Joseph own real property adjacent to and going into the Arkansas River.[1] Pursuant to their deed, Defendants Waresa and Joseph purport to own the bed of the Arkansas River adjacent to their property, including Mr. Hill's favorite fishing hole. (*Id*. at ¶¶ 7–14, Ex. 1). They claim that Plaintiff trespasses on their land by standing and fishing on their property (*id*. at ¶ 14) and appear to be hell-bent on stopping him. Warsewa and Joseph have employed numerous tactics to drive Mr. Hill and his fishing companions – and

---

[1] This case neither deals with or concerns water rights in the Arkansas River.

inferentially other would-be trespassers – off their riverbed land, including shooting a gun at Mr. Hill's fishing companion.[2]

After a number of altercations occurred between Plaintiff and Defendants Warsewa and Joseph (*see id.* at ¶¶ 16–48), Plaintiff filed the present lawsuit in the District Court, 11th Judicial District, Freemont County, Colorado, which was removed to federal court on July 6, 2018. (Doc. No. 1).[3]

Plaintiff contends the bed of the Arkansas River adjacent to any privately owned property is or should be public land owned by the State of Colorado in trust for the public. (*Id.* at ¶¶ 7–13). In the First Amended Complaint, Plaintiff asserts that the doctrines of equal footing and navigability of title make the bed of the Arkansas River public land owned by the State of Colorado on which he may legally stand, walk, wade and fish. (*Id.* at ¶ 2). He seeks a declaratory judgment to this effect and requests injunctive relief barring Defendants Warsewa and Joseph from excluding Plaintiff from using the riverbed adjacent to their property. (*Id.* at ¶¶ 63-65). Plaintiff claims that he fears physical violence, arrest, and claims of trespass if he returns to his fishing spot absent such a ruling by the court.[4] (Am. Compl. at 15). Plaintiff also asserts a claim for quiet title in which he requests an adjudication of the rights between the State

---

[2] Defendant Warsewa was prosecuted for the shooting in the Fremont County Court and on August 25, 2015, Defendant Warsewa pleaded guilty to menacing pursuant to Colo. Rev. Stat. § 18-3-206 for the incident. (Am. Compl. ¶¶ 41-48.)

[3] The State of Colorado was not originally named as a defendant and was not a defendant when the case was removed. After removal, Plaintiff filed a First Amended Complaint on July 17, 2018, in which he named the State of Colorado as a defendant.

[4] Although Defendant Warsewa and Joseph appear to be rather extreme in their desire to rid themselves of Mr. Hill's presence, this kind of claim is not unique to Plaintiff Hill. Notwithstanding the history of altercation between himself and Warsewa and Joseph, Plaintiff's professed fears are no different from fear of repercussions that could plausibly be shared by *any* members of the public who willfully trespass on land claimed to be owned by private individuals.

of Colorado and Warsewa and Joseph. He seeks a decree from the court that the property is owned by the State and held in trust for the public. (*Id.* at ¶ 73).

Defendants Joseph and Warsewa, and the State of Colorado, filed motions to dismiss. (Doc. Nos. 21, 27). Defendants argue the case should be dismissed for lack of prudential standing, lack of constitutional standing, and failure to state a claim for relief. (*Id.*)

**ANALYSIS**

Public access to Colorado's rivers and the waters that flow within have been the subject matter of litigation for many years. *See* e.g., *People v. Emmert*, 198 Colo. 137, 141, 597 P.2d 1025, 1027 (1979); *St. Jude's Co. v. Roaring Fork Club, L.L.C.*, 351 P.3d 442 (Colo. 2015). Whether state inhabitants can meander in or around waterways unimpeded by the normal laws governing property ownership has its genesis in the equal footing doctrine, borne from a series of cases starting in 1842. The Supreme Court has addressed the issue on more than one occasion, summing up the doctrine as follows:

> [U]pon its date of statehood, a State gains title within its borders to the beds of waters then navigable. It may allocate and govern those lands according to state law subject only to the United States' power to control such waters for purposes of navigation in interstate and foreign commerce.…To be navigable for purposes of title under the equal-footing doctrine, rivers must be navigable in fact, meaning they are used, or are susceptible of being used, ... as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

*PPL Mont., LLC v. Mont.*, 565 U.S. 576 (2012) (internal citations and quotations omitted); s*ee also Shively v. Bowlby,* 152 U.S. 1, 31 (1894) (supporting proposition that States, in their capacity as sovereigns, hold "title in the soil of rivers really navigable," which has federal constitutional significance under the equal-footing doctrine because of the structure of the government of the United States, providing for co-equal sovereigns under the constitution); *Or.*

4

*ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 374 (1977)("the basis for the equal-footing doctrine, under which a State's title to these lands was "conferred not by Congress but by the Constitution itself").

Mr. Hill argues that, despite almost 200 years of private ownership vested in parts of Colorado's river beds, Colorado must now take title to the entirety of the state's river beds and hold them in public trust for the benefit of the state's citizenry. What he has failed to consider, however, is that the State does not want ownership of these sections of privately owned river beds, preferring instead to defer to riparian private property ownership concepts.[5]

Applicability of any public trust doctrine is a matter of state law. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997); *Appleby v. City of New York,* 271 U.S. 364, 383 (1926). The court notes that Colorado has rejected any generalized public trust doctrine. *City of Longmont v. Colo. Oil & Gas Ass'n*, 369 P.3d 573, 586 (Colo. 2016) ("The Colorado Constitution does not include a [public trust] provision. . . nor have we seen any applicable Colorado case law adopting the public trust doctrine in this state.") While equal-footing cases have frequently noted that a state takes title to the navigable waters and their beds in trust for the public, *see Shively v. Bowlby*, 152 U.S. 1, 49 (1894), the contours of that public trust do not depend upon the Constitution. Under accepted principles of federalism, the states retain residual power to determine the scope of the public trust over waters within their borders, while federal

---

[5] The State claims that in order to credit Mr. Hill's argument, portions of the riverbed currently under private ownership would have to be "taken from their owners" and declared "public land owned by the state of Colorado, . . . invalidat[ing] private property rights that were established near or before the year 1876, raising a host of serious legal concerns for the State—not the least of which is whether the State [would owe] compensation for the taking of land . . . along a 280-mile stretch of river." (Doc. No. 27. at 1.)

law determines riverbed title under the equal-footing doctrine." *PPL Mont., LLC*, 565 U.S. at 603–04.

Additionally, the question here is not so much whether Colorado can turn its back on the responsibility of such an alleged "public trust" but whether a private citizen with no ownership right in the property can bring the issue to this court in the way it is currently framed. The answer here is "no."

Initially the court notes, without deciding, that while Mr. Hill might like to force the State of Colorado to change its position on title ownership of the Arkansas River riverbed by naming it as a defendant, he would be barred from doing so by the Eleventh Amendment.[6] The Eleventh Amendment prohibits federal lawsuits by private citizens against non-consenting states. *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304 (1990). It is "a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 559 (10th Cir. 2000). Accordingly, it forbids not only the entry of judgment against a state but also the initiation of legal proceedings altogether. *Seminole Tribe v. Fla., 517 U.S. 44, 58 (1996); Lewis v. Clarke,* 137 S. Ct. 1285, 1290 (2017) ("If … an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection.").

Since Mr. Hill cannot force the State to act, his claims boil down to an attempt by Mr. Hill to take it upon himself to assert the State's perceived property rights.[7] But he is once again

---

[6] Eleventh Amendment immunity does not apply, of course, to Defendants Warsewa and Joseph and would not resolve the case against them and is not stated as *grounds* for dismissal here even by the State.

[7] The Attorney General has exclusive authority to represent the State's interests in court. *Mtn. States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (citing *State Bd. of Pharmacy*

foiled because interested members of the public like Mr. Hill have no legally protected interest in the government's perceived property rights, even if they might derive some benefit from public lands. *See Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt.*, 363 F.3d 1069 (10th Cir. 2004)(holding that off-road vehicle enthusiasts, as members of public, do not have title in public roads and cannot assert counties' putative rights-of-way against the federal government); *Kinscherff v. U.S.*, 586 F.2d 159, 160 (10th Cir. 1978)(explaining that members of the public do not have "title" in public roads and cannot maintain an action to quiet title in them, despite their use and enjoyment of them); *see also Mtn. States Legal Found. v. Costle,* 630 F.2d 754, 763 (10th Cir. 1980)(holding that a member of the public lacks standing to raise claims on behalf of the State)(*citing State Bd. of Pharmacy v. Hallett,* 296 P. 540 (Colo. 1937); *Brotman v. E. Lake Creek Ranch, L.L.P.*, 31 P.3d 886, 895 (Colo. 2001)(concluding that a private ranch "does not have standing as an adjacent landowner, as a taxpayer, or as a beneficiary of the school lands trust" to enjoin transfer of title in lands from the State School Land Board to another private citizen). Therefore, Mr. Hill cannot bring a suit to quiet title to any land in the name of the State of Colorado. Mr. Hill, quite simply, lacks prudential standing to pursue this case in any forum.

Prudential standing is a "judicially-created set of principles" that limits the class of persons who may invoke the courts' powers. *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002). Prudential standing is an important threshold question for courts to consider, even prior to constitutional standing or jurisdictional issues like sovereign immunity. *See The Wilderness Soc*., 632 F.3d at 1168 (proceeding to prudential

---

*v. Hallett*, 296 P. 540 (Colo. 1937)). Colorado law provides that the Attorney General is to appear "for the state" in all legal actions in which the State "is a party or interested." COLO. REV. STAT. § 24-31-101(1)(a).

standing analysis without deciding whether the plaintiff had constitutional standing); *Kowalski v. Tesmer*, 543 U.S. 125 (2004) (skipping determination of constitutional standing to evaluate whether plaintiffs had "standing to raise the rights of others"); *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (explaining that prudential standing is the kind of "threshold question" that "may be resolved before addressing jurisdiction" and deciding threshold question prior to sovereign immunity issue); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994) ("Sovereign immunity is jurisdictional in nature.").

To satisfy the prudential standing requirement, a party must establish three conditions: 1) a plaintiff must assert his own rights, not the rights of third parties; and 2) the plaintiff's claim must not be a "generalized grievance"; and 3) a plaintiff's grievance must "arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id*. (internal citations omitted); *see RMA Ventures Cali. V. SunAmerica Life Ins. Co*., 576 F.3d 1070, 1073 (10th Cir. 2009)(explaining that under doctrine of prudential standing, litigants cannot sue to enforce the rights of others); *The Wilderness Soc. v. Kane Cnty, Utah*., 632 F.3d 1162 (10th Cir. 2011)(determining that a plaintiff lacked prudential standing where it rested its claims on the government's property rights instead of asserting a valid right to relief of its own).

It is undisputed that Plaintiff does not own the land in question and does not contend he *should* own the land in question. Therefore, Plaintiff fails on the element that he must assert his own rights. Additionally, Plaintiff does not show his claim is more than a generalized grievance based on a desire for the general public, including himself, to be able to fish in certain spots while standing on the bed of the Arkansas River and avoid the unpleasantness which could go

8

along with trespassing on private property. As to this second element, too, Plaintiff fails the test of prudential standing.

Plaintiff's position is analogous to the plaintiff in *The Wilderness Soc., id.,* where the plaintiff sought to vindicate the property rights of the federal government as to roads in southern Utah. *See* 632 F.3d at 1162 (vacating and remanding district court determination that plaintiff had prudential standing). In *The Wilderness Soc.,* the Tenth Circuit considered prudential standing in a case involving a Congressional grant of a right of way for highway construction over public lands that was not reserved for public uses. The Bureau of Land Management posted signs purporting to close specific routes in Escalante National Monument to traffic. The county requested that the government remove the signs closing the routes, but the government refused. Thereafter, the county removed the signs, but it was not the federal government who brought suit as a result. *Id.* at 1165–66. Instead, The Wilderness Society (TWS") a private entity, brought suit seeking to enforce the federal government's rights to conserve the land by closing the routes, citing public conservation interests as the ultimate driving force. *Id.* at 1171. The Tenth Circuit found that TWS was seeking to improperly enforce rights that belonged to the federal government. The court noted: "TWS has taken sides in what is essentially a property dispute between two landowners. . . [b]ut TWS lacks any independent property rights of its own." *Id*. The court found that TWS lacked prudential standing. The same is true here for Mr. Hill, who is attempting to insert himself between Warsewa and Joseph on one side and the State of Colorado on the other. Mr. Hill – just like TWS – lacks prudential standing.

### a.      *Motions to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007)).  The Tenth Circuit has held that dismissing a case for lack of prudential standing is appropriate under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1) because prudential standing is not jurisdictional.  *VR Acquisitions LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 n. 4 (10th Cir. 2017) ("we assume without deciding that it is appropriate to dismiss a complaint under Rule 12(b)(6), rather than Rule 12(b)(1), when the plaintiff lacks prudential standing"); *see, e.g. Hartnett v. Farm Serv. Agency, U.S. Dep't of Agric.*, No. 18-CV-01045-EFM-GEB, 2018 WL 2971692, at *4 (D. Kan. June 12, 2018) (dismissing complaint for lack of prudential standing subject to Rule 12(b)(6)); *see, e.g. Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("a dismissal for lack of prudential or statutory standing is properly granted under the rule governing motions to dismiss for failure to state a claim").

Because he lacks prudential standing, Mr. Hill has failed to state a claim and therefore, under Fed. R. Civ. P. 12(b)(6), his case must be dismissed.

### b.      *Motion to Remand*

In the Motion to Remand, Plaintiff contends the entire suit should be remanded based on Eleventh Amendment immunity, which he argues the State effectively claimed in its Motion to Dismiss. (Doc. No. 28 at 3–4).  As noted *infra,* the Tenth Circuit has held that prudential standing creates a threshold question for courts to consider prior to jurisdictional issues, such as sovereign immunity.  *See, e.g., The Wilderness Soc*., 632 F.3d at 1168; *Tenet*, 544 U.S. at n.4.

While the court discussed the Eleventh Amendment with respect to the manner in which Mr. Hill was required to proceed, this court dismisses this action under Fed. R. Civ. P. 12(b)(6), not on the grounds of Eleventh Amendment immunity. Because the case is dismissed on this threshold issue, which is one that cannot be cured by any amendment to his pleadings, the court denies Plaintiff's Motion to Remand.

Accordingly, it is **ORDERED**

The "Motion to Dismiss" (Doc. No. 21) and the "Motion to Dismiss the First Amended Complaint" (Doc. No. 27) are **GRANTED**. The First Amended Complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

It is further **ORDERED**

1. "Motion to Remand to State Court" (Doc. No. 28) is **DENIED**. All other pending motions are now denied as **MOOT**;

2. The defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

3. This case is and shall be **CLOSED.**

Dated this 8th day of January, 2019.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge