IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01710–KMT

ROGER HILL,

    Plaintiff,

v.

MARK EVERETT WARSEWA,
LINDA JOSEPH, and
THE STATE OF COLORADO,

    Defendants.

**ORDER**

Before the court are four motions: (1) "Defendants Joseph's and Warsewa's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Prudential Standing, or Alternatively to Dismiss the Claims Against Them in the First Amended Complaint for Lack of Constitutional Standing, Lack of Prudential Standing, and Failure to State a Claim Upon Which Relief Can Be Granted;" (2) "The State of Colorado's Motion to Dismiss the First Amended Complaint;" (3) Plaintiff's "Motion for Remand to Colorado State Court Pursuant to 28 U.S.C. 1447(c) Because the Court Lacks Subject Matter Jurisdiction;" and (4) Plaintiff's "Motion to Certify Question of the Nature of the State of Colorado's Title In Navigable Riverbeds to the Colorado Supreme Court Pursuant to Colo. App. R. 21.1(a)." [Doc. Nos. 21, 27-28, 43.] Plaintiff has responded in opposition to the two motions to dismiss, and Defendants have each replied. [Doc. Nos. 35, 41-

42.] Defendants have likewise responded in opposition to both of Plaintiff's motions, and Plaintiff has replied. [Doc. Nos. 34, 36, 40, 44-46].

On January 8, 2019, this court granted the two motions to dismiss, and dismissed Plaintiff's case, pursuant to Federal Rule of Civil Procedure 12(b)(6), for lack of prudential standing. [Doc. No. 47 at 10-11.] All other pending motions were denied as moot, and final judgment was then entered in favor of Defendants. [*Id.*; Doc. No. 48.]

On appeal, the Tenth Circuit reversed and remanded the dismissal of Plaintiff's case. *Hill v. Warsewa*, 947 F.3d 1305 (10th Cir. 2020). Relying on *Lexmark International Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 127 (2014), the Tenth Circuit held that the generalized grievance analysis entertained by this court, as part of its original Order, while applicable to the issue of constitutional standing, was not applicable to the issue of prudential standing. *Id.* at 1311. The Tenth Circuit concluded, ultimately, that this court erred in its determination that Plaintiff's generalized grievance resulted in a lack of prudential standing to bring his claims in federal court. *Id*. As a result, the two motions to dismiss, the motion to remand, and the motion to certify were reinstated.[1] [Doc. No. 57; *see* Doc. Nos. 54-56.] All four motions are now pending.

**BACKGROUND**

Plaintiff Roger Hill, a 76-year-old private citizen, brings this lawsuit against two private landowners, Defendants Mark Everett Warsewa and Linda Joseph, as well as the Defendant State

---

[1] This court's January 8, 2019 Order specifically addressed the two motions to dismiss and the motion for remand, only. [*See* Doc. No. 47.] However, because, pursuant to that Order, all pending motions were denied as moot, each of the four motions, including the motion to certify, have been reinstated. [*See* Doc. No. 57.]

of Colorado, to secure his right to wade and fish in specific areas of the Arkansas River. [Doc. No. 13 at ¶¶ 1-6.] He seeks to "enjoin[ ] these Defendants from excluding Plaintiff from the River at the subject location." [*Id*. at ¶¶ 74-75(b).] The following facts are taken from the First Amended Complaint, as well as the parties' submissions with respect to the pending motions.

As much as Plaintiff loves fly fishing on the Arkansas River, he is not a private property owner of the Arkansas River riverbed. Plaintiff neither alleges, nor claims, that he owns any of the land at issue, or that he has any direct personal claim of title to the land. Unless he is on public land as he traipses through the river, then, Hill and other persons fly fishing could be trespassing on private property. [*See* Doc. No. 13 at ¶ 1.]

Defendants Warsewa and Joseph, by contrast, own real property adjacent to, and going into, the Arkansas River.[2] [*Id*. at ¶¶ 7-10.] Pursuant to their deed, Warsewa and Joseph purport to own the riverbed adjacent to their property, including Plaintiff's chosen fishing hole. [*Id*. at ¶¶ 7–14, Ex. 1.] They claim that Plaintiff trespasses on their land by standing and fishing on their property, and appear hell-bent on stopping him from such trespass. [*Id*. at ¶ 14.] Warsewa and Joseph have employed numerous tactics to drive Plaintiff and his fishing companions (and inferentially, other would-be trespassers) off their riverbed land, including shooting a gun at Plaintiff's fishing companion.[3] [*Id*. at ¶¶ 33-48.]

After several altercations occurred between Plaintiff and the two private landowners, Plaintiff filed an action in the Colorado federal district court. [*Id*. at ¶¶ 16-48; *see* Complaint,

---

[2] This case does not concern water rights in the Arkansas River.

[3] Defendant Warsewa was prosecuted for firearm discharge in Fremont County Court, and on August 25, 2015, he pled guilty to menacing, pursuant to Colo. Rev. Stat. § 18-3-206, as a result of the incident. [Doc. No. 13 at ¶¶ 41-48.]

*Hill v. Warsewa*, No. 18-cv-00277-PAB-KLM (D. Colo. Feb. 2, 2018), ECF No. 1.] Defendants Warsewa and Joseph defaulted in that action, but the State of Colorado moved to intervene, and asked the district court to dismiss the case on Eleventh Amendment grounds. [Motion to Intervene, *Hill*, No. 18-cv-00277-PAB-KLM (D. Colo. May 7, 2018), ECF No. 17.] Before that motion was resolved, however, Plaintiff voluntarily dismissed the action. [Notice of Voluntary Dismissal, *id.* (D. Colo. May 29, 2018), ECF No. 23.] Two days later, on May 31, 2018, Plaintiff filed the present lawsuit in Colorado state court.[4] [Doc. No. 1 at Ex. 3, 5.] The case was subsequently removed to federal court, pursuant to federal question jurisdiction, on July 6, 2018. [Doc. No. 1.]

In his First Amended Complaint, Plaintiff alleges that the bed of the Arkansas River, which is adjacent to privately-owned property, is or should be public land owned by the State of Colorado, in trust for the public. [Doc. No. 13 at ¶¶ 7–13.] Plaintiff is adamant that, pursuant to the common law doctrines of equal footing and navigability of title, the riverbed is public land, on which he may legally stand, walk, wade, and fish. [*Id.* at ¶ 2.] He seeks a declaratory judgment to this effect, and requests injunctive relief, barring Defendants Warsewa and Joseph from excluding him from using the riverbed adjacent to their property. [*Id.* at ¶¶ 63-65, 74.] Plaintiff reportedly fears physical violence, arrest, and false claims of trespass, if he returns to his fishing spot, absent such a ruling by the court. [*Id.* at ¶ 15.] In his First Amended Complaint, Plaintiff also asserts a claim for quiet title, and requests an adjudication of the rights between the State of Colorado, Warsewa, and Joseph. [*Id.* at ¶¶ 66-74.]

---

[4] Plaintiff did not name the State of Colorado as a defendant in the state court action. [*See* Doc. No. 1.] Upon removal, Plaintiff filed his First Amended Complaint, in which he added the State of Colorado as a defendant. [Doc. No. 13.]

In their respective motions to dismiss, Defendants Joseph, Warsewa, and the State of Colorado argue that the case should be dismissed, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of prudential standing, lack of constitutional standing, and failure to state a claim for relief. [Doc Nos. 21, 27.]

### *LEGAL STANDARD*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint or remand an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). "[I]t has long been recognized that a federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *Shaw v. AAA Engineering & Drafting Inc.*, 138 Fed. Appx. 62, 67 (10th Cir. 2005) (citing *State Farm Mut. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Where, as here, a case is originally brought in state court, but removed to the federal court system, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). 28 U.S.C. § 1447(c).

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court

5

lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice, because a dismissal with prejudice is a disposition on the merits, which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**ANALYSIS**

Public access to Colorado's rivers has been the subject matter of litigation for many years. *See, e.g., People v. Emmert*, 198 Colo. 137, 141, 597 P.2d 1025, 1027 (1979); *St. Jude's Co. v. Roaring Fork Club, L.L.C.*, 351 P.3d 442 (Colo. 2015). Whether state inhabitants can meander in or around waterways, unimpeded by the normal laws governing property ownership, has its genesis in the equal footing doctrine. The United States Supreme Court has addressed the issue on more than one occasion, summing up the doctrine as follows:

> [U]pon its date of statehood, a State gains title within its borders to the beds of waters then navigable. It may allocate and govern those lands according to state law subject only to the United States' power to control such waters for purposes of navigation in interstate and foreign commerce.…To be navigable for purposes of title under the equal-footing doctrine, rivers must be navigable in fact, meaning they are used, or are susceptible of being used, ... as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

*PPL Mont., LLC v. Mont.*, 565 U.S. 576 (2012) (internal citations and quotations omitted); s*ee Shively v. Bowlby,* 152 U.S. 1, 31 (1894) (supporting proposition that States, in their capacity as sovereigns, hold "title in the soil of rivers really navigable," which has federal constitutional significance under the equal footing doctrine, because of the structure of the federal government, providing for co-equal sovereigns under the United States Constitution); *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 374 (1977) (stating the basis for the equal footing doctrine, under which a state's title to these lands was "conferred not by Congress but by the Constitution itself").

Plaintiff argues that, despite almost 200 years of private ownership vested in parts of Colorado's riverbeds, the State of Colorado must now take title to the entirety of its riverbeds, and hold them in public trust for the benefit of the state's citizenry. [Doc. No. 35 at 2-3.] The State of Colorado, however, does not want ownership of these sections of privately-owned riverbeds, preferring instead to defer to riparian private property ownership concepts. [Doc. No. 27 at 1-2.] The State claims that, in order to credit Plaintiff's argument, portions of the riverbed currently under private ownership would have to be "taken from their owners" and declared "public land owned by the state of Colorado, . . . invalidat[ing] private property rights that were established near or before the year 1876, raising a host of serious legal concerns for the State—

7

not the least of which is whether the State [would owe] compensation for the taking of land . . . along a 280-mile stretch of river."[5] [Doc. No. 27. at 1.]

The constitutional minimum to show standing to proceed in federal court contains three elements: (1) "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized," meaning that the injury must affect the plaintiff in a personal and individual way, and "(b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal alterations, citations, and quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)).

---

[5] It is worth noting that state courts are well-equipped to handle this type of controversy. Applicability of any public trust doctrine is a matter of state law. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997); *Appleby v. City of N.Y.,* 271 U.S. 364, 383 (1926). While equal footing cases have frequently noted that a state takes title to the navigable waters and their beds in trust for the public, *see Shively v. Bowlby*, 152 U.S. 1, 49 (1894), the contours of that public trust do not depend upon the Constitution. "Under accepted principles of federalism, the states retain residual power to determine the scope of the public trust over waters within their borders, while federal law determines riverbed title under the equal-footing doctrine." *PPL Mont., LLC*, 565 U.S. 576, 603–04 (2012). Colorado appears to have rejected any generalized public trust doctrine. *City of Longmont v. Colo. Oil & Gas Ass'n*, 369 P.3d 573, 586 (Colo. 2016) ("The Colorado Constitution does not include a [public trust] provision. . . nor have we seen any applicable Colorado case law adopting the public trust doctrine in this state.")

In this case, Plaintiff fails on the very first element of Article III constitutional standing, because the allegations in the First Amended Complaint do not demonstrate that he suffered an invasion of a legally protected interest, which is particularized. *See id.* at 560; *see also Initiative & Referendum Inst. v. Walker,* 450 F.3d 1082, 1093 (10th Cir.2006) (observing that the "legally protected interest" requirement retains "independent force and meaning").

Plaintiff, as a third party, seeks to force a governmental entity to, itself, act upon certain alleged rights. However, he simply cannot act to represent the State of Colorado on these issues.[6] *See Wilderness Soc'y v. Kane Cty., Utah,* 632 F.3d 1162, 1170-71 (10th Cir. 2011) (finding a private entity lacked prudential standing to enforce the federal government's property rights in disputed rights of way). In general, interested members of the public, like Plaintiff, have no legally protected interest in the government's perceived property rights, even if they might derive some benefit from public lands. *See Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt.*, 363 F.3d 1069 (10th Cir. 2004) (holding that off-road vehicle enthusiasts, as members of public, lack title in public roads, and therefore, cannot assert counties' putative rights-of-way against the federal government); *Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978) (explaining that members of the public do not have "title" in public roads, and cannot maintain an action to quiet title in them, despite their use and enjoyment of the public roads); *see also Mtn. States Legal Found. v. Costle,* 630 F.2d 754, 763 (10th Cir. 1980) (holding that members of the public lack standing to raise claims on behalf of the State of Colorado);

---

[6] The Colorado Attorney General has exclusive authority to represent the State of Colorado's interests in court. *Mtn. States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (citing *State Bd. of Pharmacy v. Hallett*, 296 P. 540 (Colo. 1937)). Colorado law provides that the Attorney General is to appear "for the state" in all legal actions in which the State "is a party or interested." Colo. Rev. Stat. § 24-31-101(1)(a).

*Brotman v. E. Lake Creek Ranch, L.L.P.*, 31 P.3d 886, 895 (Colo. 2001) (concluding that a private ranch "does not have standing as an adjacent landowner, as a taxpayer, or as a beneficiary of the school lands trust" to enjoin transfer of title in lands from the State School Land Board to another private citizen).

When a plaintiff asserts a general harm to the rights he shares with every other citizen, the claim falls outside the constitutional constraints on federal jurisdiction. *Lujan,* 504 U.S. at 573–74 (1992). An injury is considered "generalized," if it is "shared in substantially equal measure by all or a large class of citizens[.]" *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiff, pointing to his allegations of individualized harassment, violence, and threats, claims that these individualized harms convert an otherwise public rights claim into a private action. [Doc. No. 35 at 10-11.] Although Defendants Warsewa and Joseph appear to be rather extreme in their desire to rid themselves of fishermen on what they believe to be their property, this kind of claim is not unique to Plaintiff. Notwithstanding the history of altercation between himself and Warsewa and Joseph, Plaintiff's professed fears are no different from fear of repercussions that could plausibly be shared by *any* member of the public who willfully trespasses on land claimed to be owned by private individuals. As noted by the dissent upon Tenth Circuit review here, "Mr. Hill is not suing for assault and battery; he is suing to obtain a declaration that he has a protected right to fish in this river on the ground that this is a right enjoyed by every Colorado citizen."[7] *Hill v. Warsewa*, 947 F.3d 1305, 1312 (10th Cir. 2020) (Bacharach, J. dissenting).

---

[7] This court acknowledges that the First Amended Complaint seeks injunctive relief, barring Defendants Warsewa and Joseph from threatening, assaulting, or battering Plaintiff. [Doc. No. 13 at ¶¶ 74-75.] However, these general requests, that Defendants Warsewa and Joseph be prohibited from engaging in criminal conduct against Plaintiff, do not convert a generalized grievance into one sufficiently individualized to him, especially given Plaintiff's emphasis on the doctrine of

"[C]laims for declaratory judgments are subject to constitutional restraints on jurisdiction." *Id.* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

The United States Supreme Court has made clear that its "reluctance to entertain generalized grievances" is a constitutional mandate grounded in Article III, not a matter of prudential standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014); *see also Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy."). The Tenth Circuit has likewise observed that the "zone of interests" test "does not implicate subject matter jurisdiction," but rather, "is a question of whether [a] plaintiff has a valid cause of action," and that generalized grievances are "barred for constitutional reasons, not 'prudential' ones." *Kerr v. Polis*, 930 F.3d 1190, 1194 n.3 (10th Cir. 2019) (quoting *Lexmark*, 572 U.S. at 127 n.3, 128 n.4).

This court held, in its first Order, that Plaintiff was asserting an improper generalized grievance. [Doc. No. 47.] Having reexamined the allegations and arguments again on remand, the court's opinion has not changed. The court finds, again, that Plaintiff is asserting a generalized grievance. Because "the existence of a generalized grievance [is] a constitutional limitation on the federal courts' jurisdiction," this court finds that it lacks subject matter jurisdiction, and that remand to the District Court, 11th Judicial District, Fremont County, Colorado is warranted under 28 U.S.C. § 1447(c). *See Hill*, 947 F.3d at 1312.

Accordingly, it is

---

navigability of title, and his claim that "the Arkansas River in this location is owned by the State of Colorado in trust for the public," as his basis for relief. [*Id.* at ¶ 2.]

**ORDERED** that this case shall forthwith be **REMANDED** to the District Court, 11th Judicial District, Fremont County, Colorado. This case is and shall be **CLOSED**.

Dated this 25th day of March, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge